JUDGE CASTEL       12 CIV 0630

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

GISELE LUNKES, BERANDETT HERCZEG
and ISABELLE A. KRINTZ,

           Plaintiffs,

   - vs -

JOSEPH YANNAI and ELENA FUSILLO,

           Defendants.

------------------------------------------------------x

No. _____



## COMPLAINT

    Gisele Lunkes, Bernadett Herczeg, and Isabelle A. Krintz (collectively "Plaintiffs"), by and through their undersigned counsel, bring this action against Defendants Joseph Yannai and Elena Fusillo, alleging as follows:

### NATURE AND BASIS OF ACTION

    1.    Plaintiffs, all women, were victims of labor and sex trafficking, in or affecting international commerce, as defined by the Victims of Trafficking and Violence Protection Act of 2000. They were caused to engage in unpaid and/or underpaid labor and commercial sex acts by Defendants.

    2.    Defendant Joseph Yannai ("Yannai") and Defendant Elena Fusillo ("Fusillo") (collectively "Defendants") engaged in international labor trafficking of Plaintiffs by engaging in a scheme using lies, intimidation, and manipulation to induce Plaintiffs to travel to the United States so that they could be exploited for unpaid and/or underpaid labor at the residence of Yannai and Fusillo in Pound Ridge, New York.

3.      Yannai engaged in international sex trafficking of Plaintiffs by engaging in a scheme using lies, intimidation, and manipulation to induce Plaintiffs to travel to the United States so that they could be sexually exploited and abused by Yannai.

4.      By and through these actions, Yannai and Fusillo received financial benefits and other things of value as a result of their conduct.  These actions violated 18 U.S.C. §§ 1589 and 1591.

5.      Accordingly, Plaintiffs seek damages from Defendants under 18 U.S.C. § 1595 for trafficking Plaintiffs to engage in forced labor and commercial sex acts by means of force, threats of force, fraud, and/or coercion, in the State of New York, in an amount to be determined at trial.  Plaintiffs further seek damages pursuant to 29 U.S.C. §§ 201, *et seq.*, for violations of the Federal Labor Standards Act.

6.      Yannai and Fusillo's conduct also constitutes violations of the New York Labor Law, breach of contract, negligent infliction of emotional distress, intentional infliction of emotional distress, fraudulent misrepresentation, aiding and abetting fraudulent misrepresentation, false imprisonment, assault, and battery.

## PARTIES

7.      On information and belief, Defendant Joseph Yannai is a United States citizen and, until his related criminal trial, Yannai resided at 309 Salem Road, Pound Ridge, New York. Yannai is currently in federal custody awaiting sentencing.

8.      On information and belief, Defendant Elena Fusillo is a United States citizen and at all relevant times resided at 309 Salem Road, Pound Ridge, New York.  On information and belief, Fusillo owns the residence at 309 Salem Road, Pound Ridge, New York.

9.      Plaintiff Gisele Lunkes ("Ms. Lunkes") is a citizen of Brazil and currently resides in Westchester County, New York.  Ms. Lunkes was coerced and fraudulently induced to travel to the United States to provide labor and services to Yannai and Fusillo and commercial sex acts to Yannai from approximately July 2007 until March 23, 2009.  Ms. Lunkes was subjected to force, threats of force, serious harm, threats of serious harm, threatened abuse of law or legal process, and was subjected to a scheme, plan, or pattern intended to cause Ms. Lunkes to believe that, if she did not perform such labor, services, and commercial sex acts, she would suffer serious harm.

10.     Plaintiff Bernadett Herczeg ("Ms. Herczeg") is a citizen of Hungary and currently resides in Westchester County, New York.  Ms. Herczeg was coerced and fraudulently induced to travel to the United States to provide labor and services to Yannai and Fusillo from February 18, 2009 to March 11, 2009.  Ms. Herczeg was also coerced and fraudulently induced into performing commercial sex acts for Yannai during that time.  Ms. Herczeg witnessed threats of force and serious harm to another person and was subjected to a scheme, plan, or pattern intended to cause Ms. Herczeg to believe that, if she did not perform such labor, services, and commercial sex acts, she or another person would suffer serious harm.  Ms. Herczeg was also subjected to the threatened abuse of law or legal process.

11.     Plaintiff Isabelle A. Krintz ("Ms. Krintz") is a citizen of France and currently resides in New York, New York.  Ms. Krintz was coerced and fraudulently induced to travel to the United States to provide labor and services to Yannai and Fusillo from March 14, 2009 to March 23, 2009.  Yannai attempted to coerce and fraudulently induce Ms. Krintz into performing commercial sex acts during that time.

3

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the law of the United States. This Court also has jurisdiction under 18 U.S.C. §§ 1591 and 1595, which permit civil actions for violations of the trafficking provisions of the Victims of Trafficking and Violence Protection Act of 2000.

13.     This Court has personal jurisdiction over Yannai. The United States Attorney for the Eastern District of New York brought criminal charges against Yannai for the conduct alleged in this complaint. Yannai was tried before a jury in front of The Honorable Edward R. Korman from May 23, 2011 to June 3, 2011. Yannai was found guilty on all counts and remains remanded pending sentencing per the court's June 10, 2011 order. *United States v. Yannai*, Case No. 10-cv-594 (E.D.N.Y. 2011).

14.     This Court has personal jurisdiction over Fusillo. Fusillo's violations of the labor trafficking provisions of the Victims of Trafficking and Violence Protection Act occurred in or around Pound Ridge, New York, where she resided at all times relevant to this Complaint.

15.     Venue is proper in this district pursuant to 18 U.S.C. § 1391(b) because events giving rise to this action occurred within this District.

## FACTUAL ALLEGATIONS

**A.     Trafficking in Persons**

16.     Trafficking in persons, described as "modern slavery," "affects every region and every country in the world." (*See* U. S. Dep't of State, Trafficking in Persons Report, at 1-2 (June 2011) ("TIP 2011").)

17.     Human traffickers most frequently prey on "those who have become empowered enough to aspire to a better life but have few good options for fulfilling those aspirations." (*Id.* at 24.) Often using "subtle forms of fraud and coercion that . . . prevent a person from escaping

compelled servitude," traffickers trick, coerce, or win the confidence of their victims,

"exploit[ing] their victims' trust and confidence in their own ability to succeed," and "coerc[ing]

them into using their lives and freedom as collateral to guarantee a better future." (*Id.* at 24-25.)

Victims are often lured with false promises of good jobs and better lives, only to suffer

"appalling working conditions, little or no pay, and intimidation or violence" and are "held in

service through psychological manipulation or physical force." (*Id.* at 7, 24, 38.)

18.    Human trafficking is a transnational criminal enterprise, generating billions of

dollars each year. (*See* U.S. Dep't of State, Trafficking in Persons Report at 13-14 (June 2005)

("According to the U.S. Federal Bureau of Investigation, human trafficking generates an

estimated $9.5 billion in annual revenue.").)

19.    To combat trafficking, the United States, as well as 142 other nations, ratified the

United Nations' Protocol to Prevent, Suppress, and Punish Trafficking in Persons. (TIP 2011 at

2.)

20.    In 2000, Congress enacted the Victims of Trafficking and Violence Protection Act

(the "TVPA") to combat trafficking in persons for the purpose of forced labor and forced

prostitution by punishing the traffickers and compensating the victims. Pub. L. No. 106-386,

114 Stat. 1464 (2000).

21.    The TVPA provides a civil remedy for victims of sex and/or labor trafficking. 35

U.S.C. § 1595.

**B.    Defendants' Trafficking Enterprise**

22.    On information and belief, from at least 2003 to 2009, Defendants Yannai and

Fusillo engaged in a scheme to coerce and fraudulently induce young women to travel to the

United States from abroad to provide labor and services. Yannai also used this scheme to

sexually abuse the young women.

23.    On information and belief, Yannai contacted young women throughout the world, using websites designed to match women seeking work as an au pair with families in need of such workers.

24.    On information and belief, Yannai and Fusillo selected women based upon their photographs and willingness to live in the Defendants' residence.

25.    On information and belief, unbeknownst to the Plaintiffs, Yannai posed as "Joanna" (and, occasionally, "Sylvia") in email correspondence with women he found on the au pair websites.

26.    "Joanna" contacted Plaintiffs through two such au pair websites:  aupair-world.com and greataupair.com.  After "Joanna" made the initial overtures to Plaintiffs, Yannai contacted the Plaintiffs as himself.

27.    "Joanna" stated in emails to Plaintiff that she was a young woman who previously worked as Yannai's personal assistant.

28.    "Joanna" also wrote that Yannai and Fusillo were married, had no children, and were not looking for a traditional au pair.  Instead, according to "Joanna," Yannai was a businessman, involved in publishing books in the hospitality industry, who was looking for an assistant to, among other things, prepare meals and beverages, clean Defendants' residence, and accompany Yannai on business trips.

29.    "Joanna" made representations that Yannai would train Plaintiffs to be successful businesswomen, allowing them to make professional connections and receive unique opportunities for business travel and networking events.

30.    "Joanna" presented Plaintiffs with two compensation alternatives in her email correspondence:

6

a.   A live-out option in which Plaintiffs would be paid $2,000 a month, but no

living expenses would be paid other than the food eaten in the Yannai-

Fusillo residence and travel expenses during business trips; or

b.   A live-in option in which Plaintiffs would receive meals, room, board, and

$20,000 at the end of the year, and, "Joanna" explained, "[e]verything

from clothing to shoes, from [T]amp[a]x to hairdresser[s], from books to

CDs will be paid [for]. . . ."

"Joanna" lauded the benefits of living-in.  "She" also informed Ms. Herczeg and Ms. Krintz that

the cost of their airline tickets to the United States would be reimbursed at the end of the year.

31.    On information and belief, at the time "Joanna" sent the correspondence, Yannai

had no intention of actually compensating Plaintiffs.

32.    Yannai, as himself or as "Joanna," also told Plaintiffs that he and his attorney

would obtain green cards for the Plaintiffs if Yannai was satisfied with their performance.  On

information and belief, Yannai never initiated any green card proceedings or had any intention of

initiating green card proceedings.

33.    Plaintiffs believed and relied on these fraudulent misrepresentations.

34.    Yannai, as himself or as "Joanna," lured and fraudulently induced Plaintiffs to

travel to the United States from abroad to work at Defendants' residence.

35.    Yannai, as himself or as "Joanna," instructed Plaintiffs to travel to the United

States, explicitly ordering each to lie to immigration about the purpose for their travel.

36.    Plaintiffs traveled to the United States through John F. Kennedy International

Airport, where they were met by Yannai and transported to Defendants' residence at 309 Salem

Road, Pound Ridge, New York.

7

37.     Plaintiffs received room and board but did not receive financial compensation from Defendants.

## C.     Defendants' Labor Abuse of Plaintiffs

38.     Plaintiffs were forced to perform a variety of labor and service tasks for Defendants, including but not limited to cleaning the home, washing dishes, shoveling snow, washing cars, preparing beverages and meals, caring for Defendants' dog, preparing baths for Yannai, bathing Yannai, bringing Yannai cigarettes, and waking Yannai from naps. In addition, Plaintiffs were directed to compile data from Internet websites, which was purportedly research for Yannai's writing.

39.     Fusillo instructed Plaintiffs on how to perform their household tasks, such as preparing beverages and meals, cleaning the home, and preparing baths for Yannai.

40.     Fusillo trained Plaintiffs on the "house rules."

41.     Ms. Lunkes worked for Defendants from approximately July 2007 to March 23, 2009. Ms. Lunkes was forced to work seven days a week from approximately 7:00 a.m. to approximately 7:00 p.m. for a majority of that time. Ms. Lunkes was never paid for her labor and services.

42.     Ms. Herczeg worked for Defendants from February 18, 2009 to March 11, 2009. Ms. Herczeg was forced to work six days a week from approximately 7:00 a.m. to approximately 7:00 p.m. Ms. Herczeg was never paid for her labor and services and never reimbursed the cost of her airline ticket to the United States.

43.     Ms. Krintz worked for Defendants from March 14, 2009 to March 23, 2009. Ms. Krintz was forced to work five days a week from approximately 7:30 a.m. to approximately 5:00 p.m. Ms. Krintz was never paid for her labor and services and never reimbursed the cost of her airline ticket to the United States.

**D.**   **Yannai's Use of Force and Serious Harm, Threats of Force and Serious Harm, Threatened Abuse of Law or Legal Process, Fraud, and Coercion Intended to Cause Plaintiffs to Believe Plaintiffs or Another Would Suffer Serious Harm**

44.     Yannai manipulated, lured, and fraudulently induced Plaintiffs to travel to the United States and live in the Yannai-Fusillo residence through material misrepresentations regarding "Joanna," Yannai, compensation, the nature of the work, and green card proceedings.

45.     Yannai struck Ms. Lunkes on the face on multiple occasions, and Ms. Lunkes also witnessed Yannai punching another young victim in the face.

46.     Yannai threatened to kill Ms. Lunkes repeatedly from 2007 to 2009.  Ms. Herczeg witnessed one of Yannai's threats to kill Ms. Lunkes.  On at least one occasion, Yannai wrapped his hands tightly around Ms. Lunkes throat in a choking manner and threatened to kill her if she were to leave or try to return to Brazil.

47.     Yannai slapped Ms. Herczeg.

48.     Yannai intimidated Ms. Lunkes, Ms. Herczeg, and Ms. Krintz by telling them that he had killed people while serving in the Israeli military.

49.     Yannai subjected Plaintiffs to emotional and psychological abuse.  For example:

   a.     Yannai repeatedly criticized Ms. Lunkes's physical appearance and intelligence, telling her that she was fat, stupid, and did not think.

   b.     Yannai repeatedly criticized Ms. Herczeg's physical appearance.  Yannai also repeatedly denied Ms. Herczeg food, telling Ms. Herczeg this was because she was fat.  Yannai routinely called Ms. Herczeg a "dick head" whenever she resisted his sexual advances.

   c.     Yannai repeatedly criticized Ms. Krintz's physical appearance and age, calling her "the 40-year-old virgin" when she spurned his sexual advances.

50. Plaintiffs were forced to abide by a "dress code" during their employment, which included skirts, blouses, and high heels. Defendant Yannai also informed Plaintiffs that they could not wear bras as part of the "dress code."

51. Yannai and Fusillo both separately purchased "dress code" clothing for Ms. Lunkes.

52. Yannai told Ms. Lunkes that when an unidentified young woman filed a complaint against him with the police, Yannai had her deported. Yannai insinuated to Ms. Lunkes that the same thing would happen to her if she complained.

53. Yannai and Fusillo controlled and limited Plaintiffs' access to and contact with their families and friends. For example, Ms. Lunkes and Ms. Herczeg were allowed only one, seven-minute call to their families per week, which Yannai monitored. In addition, Yannai and Fusillo did not provide Plaintiffs with access to transportation. Defendants' house was located in the woods on a street without sidewalks and without access to public transportation.

54. Yannai took all of Ms. Lunkes's money (approximately 500 Euros), and told her he would send the money to Ms. Lunkes's mother. Ms. Lunkes's mother never received the money. On information and belief, Yannai stole Ms. Lunkes's money.

55. On information and belief, Fusillo had knowledge of, or acquiesced to, Yannai's use of force, threats of force and serious harm, threatened abuse of law or legal process, fraud, and coercion intended to cause Plaintiffs to believe Plaintiffs or another would suffer serious harm.

56. Plaintiffs continue to suffer the effects of the psychological abuse Yannai and Fusillo inflicted upon them. Plaintiffs experience nightmares, flashbacks, and anxiety stemming from this abuse.

E.      **Yannai's Sexual Abuse of the Plaintiffs**

57.     Yannai subjected Plaintiffs to attempted and actual sexual assaults.

1.      **Ms. Lunkes**

58.     Ms. Lunkes worked for Defendants from approximately July 2007 to March 23, 2009.  Ms. Lunkes was sexually assaulted hundreds of times over this period of time.

59.     Beginning shortly after Ms. Lunkes arrived in July 2007, Yannai repeatedly forced Ms. Lunkes to perform oral sex by pushing her head down to his penis and ordering Ms. Lunkes to perform the act.  On several occasions, Yannai dragged Ms. Lunkes into his bedroom and violently pushed her onto the bed to perform oral sex on Yannai, leaving marks and bruises on Ms. Lunkes's body.

60.     On at least one occasion, Yannai forced his penis down Ms. Lunkes's throat while his body was pressed against her body, making it impossible for Ms. Lunkes to move.  Ms. Lunkes felt like she was unable to breath and had to kick and push at Yannai with her hands and feet until he let her go.

61.     Ms. Lunkes was frequently ordered to hold Yannai's penis while he was in the bathtub, wash Yannai, towel Yannai dry, and then perform oral sex on Yannai.

62.     Yannai repeatedly bit Ms. Lunkes on the breasts, legs, arms, fingers, and back, causing bruises.

63.     Yannai took naked photographs of Ms. Lunkes and shared these photographs with others.

64.     Ms. Lunkes was afraid of Yannai.

### 2.    Ms. Herczeg

65.    Ms. Herczeg worked for Defendants from February 18, 2009 to March 11, 2009. Ms. Herczeg's daily tasks included serving coffee, bringing cigarettes, making baths, and giving Yannai a towel after his baths.

66.    Yannai repeatedly ordered Ms. Herczeg to sit next to the bathtub during his bath and to wash him with soap.

67.    Yannai frequently grabbed Ms. Herczeg's hand and tried to pull it to his genitals. Yannai also repeatedly grabbed Ms. Herczeg's breasts and once bit her breasts.

68.    On one occasion, Yannai forced Ms. Herczeg to hold his penis and keep her hand on his penis while Yannai masturbated.

69.    On multiple occasions, Yannai grabbed Ms. Herczeg's breasts from behind her while Ms. Herczeg was sitting at the desk, pinning her between the desk and himself.

70.    On one occasion, Yannai climbed on top of Ms. Herczeg, pinning her down with his legs, and masturbated on Ms. Herczeg.

71.    On another occasion, Yannai grabbed Ms. Herczeg's hair and pushed her down to her knees in order to force her to perform oral sex despite her objections.

72.    Yannai became angry with Ms. Herczeg when Ms. Herczeg resisted Yannai's sexual assaults.

73.    Yannai told Ms. Herczeg that if she would not perform sexual acts for him, Ms. Herczeg would be treated like "furniture" in the house and would not be spoken to, would not be able to leave the house, would not receive assistance with her health and other needs, and would not be allowed to meet other people to become a businesswoman.

74.    Ms. Herczeg was afraid of Yannai.

**3.     Ms. Krintz**

75.     Ms. Krintz worked for Defendants from March 14, 2009 to March 23, 2009.

76.     Yannai hugged and kissed Ms. Krintz on the nose and cheek during this time.  On at least one occasion, Yannai deliberately groped Ms. Krintz's breast.

77.     Ms. Krintz was afraid of Yannai.

**F.     Plaintiffs Escape Defendants' Residence**

78.     Ms. Herczeg met a Hungarian citizen living in Pound Ridge, New York, through the Internet.  Ms. Herczeg contacted this individual and secretly met with her on March 11, 2009. After the meeting, Ms. Herczeg returned to the Yannai-Fusillo house to pack her belongings. Around midnight, police officers arrived at the house and asked Ms. Herczeg whether she wanted to leave.  Ms. Herczeg left the house and did not return.

79.     Ms. Herczeg cooperated with the police during their investigation.

80.     On March 23, 2009, the police returned to the Yannai-Fusillo residence and rescued Ms. Lunkes and Ms. Krintz.

**G.     The Criminal Trial**

81.     On July 29, 2010, the United States of America filed an indictment against Joseph Yannai in the Eastern District of New York.  *United States v. Yannai*, Case No. 10-cv-594 (E.D.N.Y. filed July 29, 2010).

82.     The indictment alleged that "[b]etween approximately 2003 and 2009, YANNAI engaged in a scheme, using lies, intimidation and manipulation, to induce young women, mostly between the ages of 18 and 25, to travel to the United States from abroad so that he could sexually abuse them."

83.     The indictment included counts for attempted forced labor and forced labor under the Trafficking Victims Protection Reauthorization Act.

84.     The case was tried before a jury in front of The Honorable Edward R. Korman from May 23, 2011 to June 3, 2011.  On June 3, 2011, the jury returned a verdict finding Yannai guilty on all counts, including attempted forced labor and forced labor under the Trafficking Victims Protection Reauthorization Act.  35 U.S.C. § 1589.

85.     According to an article in *The Daily Pound Ridge*, Police Chief Ryan described Yannai as a "deviant" and "master manipulator."  Police Chief Ryan said that while "[t]his was something you wouldn't expect to find in Pound Ridge . . . it was the most satisfying conviction I've had in my 29 years in law enforcement."

## FIRST CLAIM FOR RELIEF
### (Forced Labor in Violation of 18 U.S.C. §§ 1589, 1595)

86.     Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

87.     Defendants knowingly obtained the labor or services of Plaintiffs by means of force, threats of force, means of serious harm, threats of serious harm, means of abuse or threatened abuse of law or legal process, and a scheme, plan, or pattern intended to cause Plaintiffs to believe that they or another person would suffer serious harm in violation of 18 U.S.C. § 1589(a).

88.     Defendants knowingly benefitted financially and/or by receiving anything of value by recruiting, enticing, harboring, transporting, providing, obtaining, and/or maintaining Plaintiffs in violation of 18 U.S.C. § 1589(a)(2).

89.     Plaintiffs are authorized to bring this civil claim against Defendants pursuant to the civil remedies provision of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595.

90.     Plaintiffs suffered injuries and damages as a proximate result of these actions.

## SECOND CLAIM FOR RELIEF
### (Trafficking with Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of 18 U.S.C. §§ 1590, 1595)

91.     Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

92.     Defendants "knowingly recruit[ed], harbor[ed], transport[ed], provid[ed]" and/or obtained Plaintiffs for labor or services in violation of 18 U.S.C. § 1590.

93.     Plaintiffs brings these claims pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of trafficking.

94.     As a proximate result of Defendants' actions, Plaintiffs suffered severe pain and suffering, including emotional distress, humiliation, embarrassment, and substantial lost wages.

## THIRD CLAIM FOR RELIEF
### (Sex Trafficking in Violation of 18 U.S.C. §§ 1591, 1595)

95.     Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

96.     Yannai knowingly recruited, enticed, harbored, transported, provided, obtained, and/or maintained Plaintiffs, causing Plaintiffs to engage in commercial sex acts in violation of 18 U.S.C. § 1591.

97.     Yannai knowingly benefitted financially and/or by receiving anything of value by recruiting, enticing, harboring, transporting, providing, obtaining, and/or maintaining Plaintiffs, causing Plaintiffs to engage in commercial sex acts, in violation of 18 U.S.C. § 1591(a)(2).

98.     Plaintiffs brings these claims pursuant to 18 U.S.C. § 1595, which provides a civil cause of action for victims of trafficking.

99.     Plaintiffs suffered injuries and damages as a proximate result of these actions.

## FOURTH CLAIM FOR RELIEF
### (Unpaid Federal Minimum Wages in Violation of The Federal Labor Standards Act 29 U.S.C. §§ 201 *et seq.*)

100.    Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

101.     Defendants employed Plaintiffs within the meaning of the Fair Labor Standards

Act ("FLSA"), 29 U.S.C. §§ 203(d)-(e).

102.     Defendants failed to pay Plaintiffs the minimum wage, in violation of 29 U.S.C. §

206(a) and the regulations of the United States Department of Labor.

103.     At all times relevant hereto, the relationship between the Defendants and

Plaintiffs was one of private master and servant.

### FIFTH CLAIM FOR RELIEF
#### (Unpaid State Minimum Wages and Overtime Wages
#### in Violation of The New York Labor Law, N.Y. Lab. Law §§ 650 *et seq.*)

104.     Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

105.     The minimum wage on and after January 1, 2007, is $7.15.  N.Y. Labor Law

§ 652.

106.     Overtime pay at a rate of not less than one and one-half times the regular rate of

pay is required for all hours worked in excess of forty hours for non-residential employees, or

forty-four for residential employees, per workweek.  N.Y. Labor Law § 650 *et seq.*; 12 NYCRR

§ 142-3.2.

107.     Plaintiffs are authorized to bring this civil claim against Defendants pursuant to

the civil action provision of the New York Labor Law.  N.Y. Labor Law § 663.

108.     Plaintiffs were never paid for their work.  Plaintiffs were therefore not paid the

wages to which they were entitled under the provisions of the New York Labor Law.

### SIXTH CLAIM FOR RELIEF
#### (Breach of Contract)

109.     Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

110.     Defendants entered into written and/or oral employment agreements with

Plaintiffs.

111.     Plaintiffs provided their labor and services to Defendants pursuant to the employment agreements.

112.     Defendants breached their obligations to Defendants under the employment agreements, including, but not limited to, obligations pertaining to compensation, green card proceedings, room, board, and business training and opportunities.

113.     Plaintiffs suffered injuries and damages as a proximate result of Defendants' breach.

## SEVENTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)

114.     Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

115.     Defendants owed a duty of reasonable care to Plaintiffs while Plaintiffs resided in Defendants' home and were employed by Defendants.

116.     Ms. Lunkes and Ms. Herczeg suffered repeated instances of physical, sexual, psychological, and emotional abuse from Yannai.

117.     Ms. Krintz suffered repeated instances of psychological and emotional abuse from Yannai.

118.     Fusillo knew or had reason to know of Yannai's abuse of Plaintiffs in her home.

119.     Defendants breached their duties of reasonable care to each Plaintiff.

120.     Plaintiffs suffered severe emotional distress as a result of the abuse they endured in Defendants' home.

## EIGHTH CLAIM FOR RELIEF
### (Fraudulent Misrepresentation)

121.     Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

122.  Yannai, both as himself and as his alter ego "Joanna," made material false representations to Plaintiffs about himself, "Joanna," compensation, the nature of the work required, and obtaining green cards for Plaintiffs.

123.  Yannai made these material false representations for the purpose of defrauding Plaintiffs.

124.  Plaintiffs relied on these material false representations and traveled to the United States to provide labor and services to Defendants.

125.  Plaintiffs suffered injuries and damages as a proximate result of Yannai's fraudulent misrepresentations.

## NINTH CLAIM FOR RELIEF
### (Aiding and Abetting Fraudulent Misrepresentation)

126.  Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

127.  Yannai, both as himself and as his alter ego "Joanna," made material false representations to Plaintiffs about himself, "Joanna," compensation, the nature of the work required, and obtaining green cards for Plaintiffs.

128.  Yannai made these material false representations for the purpose of defrauding Plaintiffs.

129.  Plaintiffs relied on these material false representations and traveled to the United States to provide labor and services to Defendants.

130.  On information and belief, Fusillo had actual or constructive knowledge of the misconduct and substantially assisted therein.

131.  Plaintiffs suffered injuries and damages as a proximate result of Fusillo's aiding and abetting of the fraudulent misrepresentations.

## TENTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress as to Defendant Yannai)

132.   Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

133.   Defendant Yannai insulted and psychologically abused Plaintiffs in an extreme and outrageous manner by repeatedly criticizing Plaintiffs' physical appearance and intimidating them by telling them he killed people while serving in the Israeli military. Defendant Yannai acted well beyond the bounds of normal human decency on a continuous and systematic basis by forcing Plaintiffs to abide by a dress code that included the prohibition of wearing bras and by severely restricting their communications with their families and the outside world.

134.   Defendant Yannai abused Ms. Lunkes in an extreme and outrageous manner by repeatedly slapping Ms. Lunkes in the face, striking another woman in her presence, and choking Ms. Lunkes while simultaneously threatening to kill her. Defendant Yannai further acted well beyond the bounds of normal human decency by forcing Ms. Lunkes to perform oral sex on him on a daily basis, by forcing her to hold his penis while washing him in the bathtub, by repeatedly groping and biting Ms. Lunkes's breasts, legs, arms, fingers, and back, and by photographing Ms. Lunkes naked and sharing these photographs with others.

135.   Defendant Yannai threatened and abused Ms. Herczeg in an extreme and outrageous manner by threatening to kill Ms. Lunkes in Ms. Herczeg's presence. Defendant Yannai further acted well beyond the bounds of normal human decency by repeatedly forcing Ms. Herczeg to sit with him while he bathed and wash him with soap, by repeatedly attempting to force Ms. Herczeg to touch his genitals, by masturbating on Ms. Herczeg while holding her down, by repeatedly attempting to force Ms. Herczeg to perform oral sex, and by grabbing and biting Ms. Herczeg's breasts.

136.    As a result of Defendant Yannai's outrageous and extreme behavior, Plaintiffs were put in fear for their safety and suffered and continue to suffer extreme emotional distress, embarrassment, and humiliation.

## ELEVENTH CLAIM FOR RELIEF
### (Assault as to Defendant Yannai)

137.    Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

138.    Defendant Yannai's actions and words set forth above were intended to cause harmful and/or offensive contact with Plaintiffs and/or the apprehension of imminent harmful and/or offensive physical contact without Plaintiffs' consent.

139.    Defendants' actions were malicious and cruel.

140.    As a direct and proximate result of the actions and/or words of Defendant Yannai, Defendant Yannai placed Plaintiffs in apprehension of imminent harmful and/or offensive physical contact.

141.    As a result of the foregoing, Plaintiffs have suffered and continue to suffer emotional distress, embarrassment, and humiliation.

## TWELFTH CLAIM FOR RELIEF
### (Battery as to Defendant Yannai)

142.    Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

143.    Defendant Yannai's actions set forth above were intended to cause offensive contact with Plaintiffs without Plaintiffs' consent.

144.    Defendant Yannai's actions directly and proximately caused Plaintiffs to suffer offensive contact without Plaintiffs' consent.

145.    As a result of the foregoing, Plaintiffs' have suffered physical harm as well as severe emotional distress, embarrassment, and humiliation.

## THIRTEENTH CLAIM FOR RELIEF
### (False Imprisonment)

146.    Plaintiffs allege and re-allege the paragraphs above as if fully set forth herein.

147.    Defendants knowingly and intentionally confined Plaintiffs Lunkes and Herczeg within Defendants' house by threats of physical harm, constant verbal abuse, and isolation from community and family, so as to deprive Plaintiffs of their freedom of movement.

148.    Defendants confined Plaintiff Lunkes and Herczeg knowingly and willingly and with malice and reckless disregard for their rights.

149.    As a proximate result of Defendants' conduct, Plaintiffs Lunkes and Herczeg endured pain and suffering, including emotional distress, embarrassment and humiliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

1)    awarding Plaintiffs compensatory damages in an amount to be proven at trial;

2)    awarding Plaintiffs punitive damages of $100 million;

3)    awarding Plaintiffs their actual expenses of litigation, including attorneys' fees; and

4)    granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated:   New York, New York
         January 25, 2012

GIBSON, DUNN & CRUTCHER LLP

By: _____
        Mitchell Karlan [MK-4413]
        Jana N. Checa [JC-1804]
        Sharon I. Grysman [SG-2383]

200 Park Avenue
New York, NY  10166-0193
Telephone: 212.351.4000
Fax: 212.351.4035

*Attorneys for GISELE LUNKES, BERNADETT
HERCZEG, and ISABELLE A. KRINTZ*